# NO. 12-08-00344-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *THE STATE OF TEXAS FOR* | § | *APPEAL FROM THE* |
| *THE BEST INTEREST AND* | § | *COUNTY COURT AT LAW* |
| *PROTECTION OF W.G.* | § | *CHEROKEE COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

W.G. appeals from an order authorizing the Texas Department of State Health Services (the "Department") to administer psychoactive medication-forensic. In one issue, W.G. asserts the evidence is legally and factually insufficient to support the trial court's order. We reverse and render.

### BACKGROUND

On August 12, 2008, Gary Paul Kula, M.D. signed an application for an order to administer psychoactive medication-forensic to W.G. In the application, Kula stated that W.G. was subject to an order for inpatient mental health services issued under chapter 46B (incompetency to stand trial) of the Texas Code of Criminal Procedure. Kula stated that W.G. had been diagnosed with bipolar disorder type 1, manic, with psychosis, and requested the trial court to compel W.G. to take five psychoactive medications: an antidepressant, an anxoilytic/sedative/hypnotic, an antipsychotic, a mood stabilizer, and a miscellaneous psychoactive drug. According to Kula, W.G. refused to take the medications voluntarily and, in his opinion, W.G. lacked the capacity to make a decision regarding administration of psychoactive medications because he displayed prominent mania and psychosis interfering with rational judgment.

Kula concluded that these medications were the proper course of treatment for W.G. and that, if he were treated with the medications, his prognosis would be fair. Kula believed that, if W.G.

were not administered the medications, the consequences would be prolonged hospitalization and escalation of aggression. Kula considered other medical alternatives to psychoactive medication, but determined that those alternatives would not be as effective. He believed the benefits of the psychoactive medications outweighed the risks in relation to present medical treatment and W.G.'s best interest. Kula also considered less intrusive treatments likely to secure W.G.'s agreement to take psychoactive medication.

On August 19, 2008, the trial court held a hearing on the application. Kula testified that he was W.G.'s treating physician and that W.G. was currently under a chapter 46B order for inpatient mental health services. He understood that W.G. was charged with a felony grade offense of driving while intoxicated. He stated that W.G. had verbally, or otherwise, refused to accept medication voluntarily. According to Kula, he believed that W.G. lacked the capacity to make a decision regarding the administration of psychoactive medication. He also stated that he completed the application for an order to administer psychoactive medication-forensic and swore that all the statements in the application were true and correct. Kula stated that W.G. suffered from bipolar disorder, type 1, manic, with psychosis. He testified that treatment with the medications set forth in the exhibit attached to the application was the proper course of treatment for W.G. and was in his best interest. Kula stated that if these medications were used, the benefit to W.G. would outweigh the risks. Further, he stated that W.G.'s hospitalization would likely be shortened and his competency restored faster if these medications were used. He doubted if W.G. would be able to have his competency restored without the use of psychoactive medications. Kula did not believe that any of these medications would interfere with W.G.'s ability to communicate with his attorney regarding the underlying criminal charge.

Kula stated that W.G. is "classic" bipolar. According to Kula, W.G. is manic and makes outrageous statements, such as claiming that he is going to drink and drive whenever he wants to and plans to do so in the future. Kula stated that W.G. did not realize how his behavior, or statements, affect other people. Although Kula stated that W.G. had been on psychoactive medications in the past, he was not sure if W.G. had been on the requested medications. He was unaware of any side effects W.G. had suffered from medications in the past. Kula admitted that he was able to discuss these medications with W.G. Further, Kula stated that W.G. was not "demented by any stretch."

2

According to Kula, W.G. is manic and psychotic, but does not have any cognitive problems. Kula stated that W.G. "clearly" understands the benefits of psychoactive medications.

W.G. testified that he understood Kula's testimony regarding psychoactive medications. However, W.G. stated that he was, and is, refusing to take psychoactive medication, and that he had the right to refuse. He testified that he did not have a reason to refuse these medications, but also stated that he is not psychotic. According to W.G., it was Kula's opinion that he was psychotic, but that did not make it true, just "a theory." When W.G. was asked if he had experienced any negative side effects from these medications in the past, he stated that he had taken medication as needed. He testified that if he is not in a stressful situation, his blood pressure is fine, even if it is not normal for the average person. He did not know why Kula was worried about it.

At the close of the evidence, the trial court granted the application. On August 19, after considering all the evidence, including the application and the expert testimony, the trial court found that the allegations in the application were true and correct and supported by clear and convincing evidence. Further, the trial court found that treatment with the proposed medication was in W.G.'s best interest and that W.G. lacked the capacity to make a decision regarding administration of the medication. The trial court authorized the Department to administer psychoactive medications to W.G., including antidepressants, antipsychotics, mood stabilizers, and anxiolytics/sedatives/hypnotics. This appeal followed.

## SUFFICIENCY OF THE EVIDENCE

In his sole issue, W.G. argues that the evidence is legally and factually insufficient to support the trial court's order to administer psychoactive medication-forensic. More specifically, W.G. contends that the State failed to prove, by clear and convincing evidence, that he lacked the capacity to make a decision regarding administration of medication and that treatment with the proposed medications was in his best interest.

**Standard of Review**

In a legal sufficiency review where the burden of proof is clear and convincing evidence, we must look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its findings were true. ***In***

3

*re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002).  We must assume that the fact finder settled disputed facts in favor of its finding if a reasonable fact finder could do so and disregard all evidence that a reasonable fact finder could have disbelieved or found incredible. *Id.*  This does not mean that we are required to ignore all evidence not supporting the finding because that might bias a clear and convincing analysis. *Id.*

The appropriate standard for reviewing a factual sufficiency challenge is whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of the petitioner's allegations. *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). In determining whether the fact finder has met this standard, we consider all the evidence in the record, both that in support of and contrary to the trial court's findings. *Id.* at 27-29. Further, we must consider whether disputed evidence is such that a reasonable fact finder could not have reconciled that disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266. If the disputed evidence is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

## Order to Administer Psychoactive Medication

A trial court may issue an order authorizing the administration of one or more classes of psychoactive medications to a patient who is under a court order to receive inpatient mental health services. TEX. HEALTH & SAFETY CODE ANN. § 574.106(a) (Vernon Supp. 2009). The court may issue an order if it finds, by clear and convincing evidence, that (1) the patient lacks the capacity to make a decision regarding the administration of the proposed medication and (2) treatment with the proposed medication is in the best interest of the patient. *Id.* § 574.106(a-1). "Clear and convincing evidence" means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979). "Capacity" means a patient's ability to (1) understand the nature and consequence of a proposed treatment, including the benefits, risks, and alternatives to the proposed treatment, and (2) make a decision whether to undergo the proposed treatment. TEX. HEALTH & SAFETY CODE ANN. § 574.101(1) (Vernon 2003). In making its findings, the trial court shall consider (1) the patient's expressed preferences regarding treatment with psychoactive medication, (2) the patient's religious beliefs, (3) the risks and benefits, from the perspective of the patient, of taking psychoactive medication, (4) the consequences to the patient if the psychoactive medication is not administered, (5) the prognosis for the patient if the patient is treated with psychoactive medication, and (6) alternatives to treatment with psychoactive medication. TEX. HEALTH & SAFETY CODE ANN. § 574.106(b) (Vernon Supp. 2009).

## Analysis

In the application, Kula stated that he believed W.G. lacked the capacity to make a decision regarding administration of psychoactive medications because he exhibited prominent mania, and psychosis interfering with rational judgment. He determined that if W.G. were not administered these medications, the consequences would be prolonged hospitalization and escalation of aggression. He also believed the benefits of the psychoactive medications were in W.G.'s best interest. At the hearing, Kula stated that W.G. refused to accept medication voluntarily. W.G.

testified that he refused to take psychoactive medication and that he did not have a reason, but also stated that he was not psychotic. Kula testified that treatment with the medications listed in the exhibit attached to the application was the proper course of treatment for W.G. and in his best interest. Further, he stated that if these medications were used, the benefits to W.G. would outweigh the risks. Kula testified that he doubted W.G. would be able to have his competency restored without the use of psychoactive medications. Although Kula stated that W.G. lacked the capacity to make a decision regarding the administration of psychoactive medication, he did not explain why W.G lacked such capacity. In fact, he stated that W.G. is not "demented by any stretch," even though he is manic, psychotic, and makes outrageous statements without understanding their effect on others. He denied that W.G. suffers from any cognitive problems and stated that W.G. "clearly" understood the benefits of psychoactive medication.

We note that nothing in the Texas Health and Safety Code regarding court ordered administration of psychoactive medication authorizes a trial court to base its findings solely on the physician's application. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.101-.110 (Vernon 2003 & Supp. 2009). Pleadings, such as the physician's application here, are not evidence that the statutory standard has been met. *See id.* § 574.031 (Vernon 2003) (stating that the Texas Rules of Evidence apply to the hearing for court ordered mental health services unless the rules are inconsistent with the subtitle); *In re E.T.*, 137 S.W.3d 698, 700 (Tex. App.–San Antonio 2004, no pet.); *see also Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer*, 904 S.W.2d 656, 660 (Tex. 1995) (noting that, generally, pleadings are not competent evidence, even if sworn or verified). Here, there was no evidence from Kula at the hearing to explain why he believed W.G. lacked the capacity to make a decision regarding administration of psychoactive medications. *See In re E.G.*, 249 S.W.3d 728, 731-32 (Tex. App.–Tyler 2008, no pet.). In fact, Kula admitted that W.G. "clearly" understood the benefits of psychoactive medications and did not suffer from any cognitive problems. Further, a conclusory statement by Kula in the application, without any testimony or explanation from him at the hearing, cannot produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *See Addington*, 588 S.W.2d at 570; *see also In re E.G.*, 249 S.W.3d at 731-32.

Thus, considering all the evidence in the light most favorable to the findings, we conclude that a reasonable trier of fact could not have formed a firm belief or conviction that W.G. lacked the capacity to make a decision regarding administration of the proposed medications and that treatment with the proposed medications was in his best interest. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.106(a-1); *In re J.F.C.*, 96 S.W.3d at 266. Consequently, the evidence is legally insufficient to support the trial court's findings based upon section 574.106 of the Texas Health and Safety Code.

Having determined that the evidence is legally insufficient, it is unnecessary for us to address W.G.'s argument that the evidence is factually insufficient to support the trial court's findings. *See* TEX. R. APP. P. 47.1. We sustain W.G.'s sole issue.

## CONCLUSION

Based upon our review of the record, we have concluded that the evidence is legally insufficient to support the trial court's order authorizing the administration of psychoactive medication-forensic. Therefore, we ***reverse*** the trial court's order authorizing the administration of psychoactive medication-forensic and ***render*** judgment denying the State's application for an order to administer psychoactive medication-forensic.

**SAM GRIFFITH**
Justice

Opinion delivered November 12, 2009.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)
